UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  07/25/2023
```

-----------------------------------------------------------------------X

CHRISTINA MALESPIN,                              :
                                                 :
                    Plaintiff,                   :       **OPINION &**
                                                 :       **ORDER**
-v-                                              :
                                                 :
KILOLO KIJAKAZI[1]                               :       22-CV-4087 (JLC)
Acting Commissioner of Social Security,          :
                                                 :
                    Defendant.                   :
                                                 :
-----------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Christina Malespin seeks judicial review of a final determination made by

Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration

("the Commissioner"), denying her application for disability insurance benefits

under the Social Security Act.  The parties have cross-moved for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the

reasons set forth below, Malespin's motion is denied, the Commissioner's cross-

motion is granted, and the case is dismissed.

---

[1] Kilolo Kijakazi is now the Acting Commissioner of the Social Security
Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this action.

# I.   BACKGROUND

## A. Procedural History

Malespin filed an application for Disability Insurance Benefits ("DIB") on February 2, 2020, alleging a disability onset date of February 22, 2018. Administrative Record ("AR"), Dkt. No. 10, at 10.[2]  The Social Security Administration ("SSA") denied her claim on July 31, 2020, and again upon reconsideration on January 7, 2021.  *Id.*  On February 16, 2021, Malespin requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  On June 30, 2021, Malespin, represented by counsel, appeared and testified before ALJ Kieran McCormack.  *Id.* at 10, 21.  The ALJ denied Malespin's application on July 29, 2021, *id.* at 21, and the Appeals Council denied Malespin's request for review on March 14, 2022, rendering the ALJ's decision final.  *Id.* at 1.

Malespin timely commenced this action on May 19, 2022, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  *See* Complaint ("Compl."), Dkt. No. 1.  The Commissioner answered Malespin's complaint by filing the administrative record on September 8, 2022.  *See* Dkt. No. 10.  On December 12, 2022, Malespin moved for judgment on the pleadings and submitted a memorandum of law in support of her motion.  Motion for Judgment on the Pleadings, Dkt. No. 14; Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem."), Dkt. No. 15.  The Commissioner cross-

---

[2] Unless otherwise specified, the page numbers refer to the sequential numbering of the Administrative Record provided on the bottom right corner of the page, not the numbers produced by the Electronic Case Filing ("ECF") System.

moved for judgment on the pleadings on March 31, 2023 and submitted a memorandum in support of her motion. Notice of Cross-Motion, Dkt. No. 22; Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Def. Mem."), Dkt. No. 23. No reply papers were filed.

### B. Administrative Record

#### 1. The Hearing Before the ALJ

The hearing was held on June 30, 2021 in White Plains, New York before ALJ McCormack. AR at 27. Malespin participated by phone and was represented by her attorney, J. Anklowitz. *Id.*[3] Vocational Expert ("VE") Kentrell Pittman also participated by phone. *Id.* at 10, 27.[4]

#### a. Malespin's Testimony

At the time of the hearing, Malespin was 59 years old and lived in Yonkers, New York with her husband. *Id.* at 30, 57, 61. The highest level of education she received was a high school diploma. *Id.* at 61. Malespin testified that she had not worked since March 2020, when she stopped her part-time position as an apartment

---

[3] The ALJ's decision notes that Malespin was represented by Christopher D. Latham, who did not appear at the hearing. *See* AR at 10.

[4] The transcript of the ALJ hearing notes that Malespin, her counsel, and VE Pittman appeared at the hearing in person. AR at 29. This appears to be incorrect as the ALJ himself observed that the hearing was being conducted by telephone, *id.*, and the ALJ's decision itself noted that all participants agreed to conduct the hearing by telephone due to the COVID-19 pandemic. *See id.* at 10; *see also id.* at 191–93.

house manager.  *Id.* at 47.  She previously worked as a credit and collection manager from 2006 to 2013.  *Id.* at 38–40.

Malespin testified that she suffers from back pain and migraines.  *Id.* at 50, 53.  She noted that there was no specific cause, *id.* at 50, but that her back pain occurred "generally," and that her mother also suffers from back issues.  *Id.* Similarly, Malespin testified that her migraines began 30 years ago.  *Id.* at 53.

In February 2018, Malespin underwent a fusion surgery on her lumbar spine. *Id.* at 50.  At the time of the hearing, she testified that her pain level was at an "eight [or] nine" on a 10-point scale, with 10 "being the worst."  *Id.* at 52.  Malespin further explained that, due to her back pain, she could not stand, walk, or sit for long periods of time.  *Id.* at 50–51.  She commented that her pain is constant but somewhat alleviated if she shifts positions while sitting and that that she can slightly manage her pain if she alternates between sitting and standing.  *Id.* at 51. Malespin takes medications for her back pain that cause "dry mouth" and "stomach problems."  *Id.* at 52–53.

Malespin also testified that she experiences migraines two to three times a week and that some last up to three days.  *Id.* at 53–54.  They are triggered by loud music, lights, and smells from cooking and perfume.  *Id.* at 56.  Malespin takes multiple medications to alleviate her migraines, *id.* at 54–55, which cause "dry mouth" and occasional fatigue.  *Id.* at 55.

Malespin next described the way her physical impairments limited her daily activity.  For example, her husband "helps [her] with everything" including using

the bathroom, *id.* at 57, and she alleviates her migraines by closing the shades,

placing "rubbers [that block] out all the noise" in her ears, and alternating between

lying down and moving around until they subside. *Id.* at 54.

### b. VE Testimony

The ALJ then questioned the VE, *id.* at 62, and provided the hypothetical of

an individual who was the same age, had the same educational background, and

performed the same relevant work as Malespin and

> can push/pull, climb ramps and stairs, balance, stoop,
> kneel, crouch, squat, and crawl on an occasional basis.
> Further, the individual cannot work at jobs containing
> concentrated exposure to airborne irritants such as fumes,
> odors, dust, gases and/or smoke. In addition, the
> individual cannot work at jobs containing concentrated
> exposure to excessive noise defined as noise in excess of a
> moderate sound level as defined in the [Dictionary of
> Occupational Titles ("DOT") and the Selected
> Characteristics of Occupations ("SCO")]. In addition, the
> individual cannot work at jobs containing any exposure to
> excessive light: defined as jobs that are indoors, and
> contain no more than ambient lighting with ambient
> lighting defined as lighting that provides a comfortable
> level of illumination [*sic* without] too much glare that will
> be found in a typical setting of an office, department store,
> or grocery store. Finally, the individual also cannot work
> at jobs containing even moderate exposure to unprotected
> heights unprotected machinery, and/or machinery with
> moving mechanical parts.

*Id.* at 62–63. The VE testified that such an individual could perform Malespin's

past work as a credit and collection manager, but not Malespin's past work as an

apartment house manager. *Id.* at 64. The ALJ further limited the hypothetical and

included a "sit/stand option" in which the hypothetical individual was permitted to

sit for 20 minutes and then stand for 10 minutes before sitting down again. *Id.*

Thus, the second hypothetical individual can "sit for a total of five hours in an eight-hour workday," *id.*, and, according to the VE, could not perform work as a credit and collection manager. *Id.* at 65.

Anklowitz, Malespin's attorney, then questioned the VE. *Id.* at 67. Anklowitz asked if he considered occasional exposure to light from a computer screen in his assessment of excessive light conditions. *Id.* at 67–68. The VE responded that he did not. *Id.* at 68. The VE then explained that, if the hypothetical included only "occasional use of a computer screen," then the hypothetical individual would not be able to perform Malespin's past work as a credit and collection manager. *Id.* at 69.

## 2.   Relevant Medical Evidence

The parties have each provided a summary of the medical evidence contained in the administrative record. *See* Pl. Mem. at 3–10; Def. Mem. at 3–11. Having examined the record, the Court adopts the parties' summaries as accurate and complete for purposes of the issues raised in this action. *See, e.g.*, *Thomas v. Saul*, No. 19-CV-6990 (MKV) (RWL), 2020 WL 5754672, at *1 (S.D.N.Y. July 24, 2020) (same), *adopted by* 2020 WL 4731421 (Aug. 14, 2020). The Court will discuss the medical evidence pertinent to the adjudication of this case in Section II.B below.

## 3.   The ALJ's Decision

On July 29, 2021, the ALJ denied Malespin's application in a 12-page decision. AR at 10–21. In doing so, he concluded that Malespin was not disabled

under sections 216(i) and 223(d) of the Social Security Act from February 22, 2018,

through July 29, 2021, the date of the decision.  *Id.* at 21.

At the first step of a sequential evaluation, the ALJ determined that

Malespin did not engage in substantial gainful activity after the alleged onset date

of February 22, 2018.  *Id.* at 12.  Proceeding to the second step, he concluded that

Malespin had the severe impairments of lumbar radiculopathy with degenerative

disc disease and spinal stenosis and migraine headaches.  *Id.* at 12–13.  He also

considered evidence of Malespin's hypertension and colon polyps and found that

they were not severe.  *Id.* at 13.  At the third step, the ALJ concluded that

Malespin's impairments, considered singularly or in combination, did not satisfy

any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id.* at 13–15.

Proceeding to the fourth step, the ALJ considered the entire record, including

evidence of Malespin's severe and non-severe impairments, and found that

Malespin had the residual functional capacity ("RFC") to perform sedentary work

except that she cannot

> climb ladders, ropes, or scaffolds.  She can push/pull,
> climb ramps and stairs, balance, stoop, kneel, crouch,
> squat, and crawl on an occasional basis.  She cannot work
> at jobs containing concentrated exposure to airborne
> irritants such as fumes, odors, dusts, gases, and/or smoke.
> She cannot not work at jobs containing concentrated
> exposure to excessive noise, defined as noise in excess of a
> moderate sound level as defined in the DOT/SCO.  She
> cannot work at jobs containing any exposure to excessive
> light: defined as jobs that are indoors and contain no more
> than ambient lighting, with ambient defined as lighting
> that provides a comfortable level of illumination without
> too much glare, that would be found in a typical setting of
> an office, department store, or grocery store.  She also

7

> cannot work at jobs containing even moderate exposure to
> unprotected heights, unprotected machinery, and/ or
> machinery with moving mechanical parts.

*Id.* at 15.  In arriving at this determination, the ALJ considered all of Malespin's

symptoms as she testified to them at the hearing, as well as the medical exams and

treatments notes in the record.  *Id.* at 15–20.  Over six pages, the ALJ discussed in

detail the findings in the medical records, the doctors who treated or reviewed

Malespin's records, and which opinions he found persuasive and why.  *Id.*

The ALJ concluded that although the DOT does not include language

regarding excessive light, the VE's opinion was nonetheless based on "his

professional knowledge and experience."  *Id.* at 21.  Thus, the ALJ determined that

Malespin was not disabled and could perform her past relevant work as a credit and

collection manager.  *Id.*

## II.   DISCUSSION

### A. Legal Standards

#### 1. Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the

Commissioner "in the district court of the United States for the judicial district in

which the plaintiff resides."  42 U.S.C. § 405(g).  The district court must determine

whether the Commissioner's final decision applied the correct legal standards and

whether the decision is supported by "substantial evidence."  *Butts v. Barnhart*, 388

F.3d 377, 384 (2d Cir. 2004).  "Substantial evidence is more than a mere scintilla.  It

means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and

alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

("Under the substantial-evidence standard, a court looks to an existing

administrative record and asks whether it contains 'sufficien[t] evidence' to support

the agency's factual determinations . . . whatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The substantial evidence standard is a "very deferential standard of review."

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  The Court

"must be careful not to substitute its own judgment for that of the Commissioner,

even if it might justifiably have reached a different result upon a *de novo* review."

*DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v.

Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and alterations

omitted).  "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a

reasonable factfinder would have to conclude otherwise.'"  *Brault*, 683 F.3d at 448

(quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

In weighing whether substantial evidence exists to support the

Commissioner's decision, "the reviewing court is required to examine the entire

record, including contradictory evidence and evidence from which conflicting

inferences can be drawn."  *Selian*, 708 F.3d at 417 (quoting *Mongeur v. Heckler*, 722

F.2d 1033, 1038 (2d Cir. 1983)).  On the basis of this review, the court may "enter,

upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding . . . for a rehearing."  42 U.S.C. § 405(g).  However, "[w]hen there are gaps in the administrative record or the ALJ has applied an improper legal standard, [the court has], on numerous occasions, remanded to the [Commissioner] for further development of the evidence."  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (alteration in original) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).

## 2.  Commissioner's Determination of Disability

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also Colgan v. Kijakazi*, 22 F.4th 353, 357 (2d Cir. 2022).  Physical or mental impairments must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "[T]he ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period . . . following the date of his claim."  *Love v. Kijakazi*, No. 20-CV-1250 (EK), 2021 WL

10

5866490, at *5 (E.D.N.Y. Dec. 10, 2021) (quoting *Williams v. Colvin*, No. 15-CV-144

(WMS), 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016)); *see also Milliken v. Saul*,

No. 19-CV-9371 (PED), 2021 WL 1030606, at *9 (S.D.N.Y. Mar. 17, 2021) ("A 'closed

period' of disability occurs where a claimant is found by the Commissioner to be

disabled for a finite period of time which began and ended prior to the date of the

agency's administrative determination of disability.").

In assessing a claimant's impairments and determining whether they meet

the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security

Act is a remedial statute, to be broadly construed and liberally applied.'" *Mongeur*,

722 F.2d at 1037 (quoting *Gold v. Sec'y of H.E.W.*, 463 F.2d 38, 41 (2d Cir. 1972)).

Specifically, the Commissioner's decision must consider factors such as: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3)

subjective evidence of pain or disability testified to by the claimant or others; and

(4) the claimant's educational background, age, and work experience." *Id.*

(citations omitted).

### a.  Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential

evaluation process' to determine whether a claimant is disabled[.]" *Estrella v.*

*Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R.

§ 404.1520(a)(4).  First, the Commissioner establishes whether the claimant is

presently employed.  *See* 20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is

11

unemployed, the Commissioner goes to the second step and determines whether the claimant has a "severe" impairment restricting his or her ability to work.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant has such an impairment, the Commissioner moves to the third step and considers whether the medical severity of the impairment "meets or equals" a listing in Appendix One of Subpart P of the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is considered disabled.  *See id.*; 20 C.F.R. § 404.1520(d).

If the claimant's impairment does not meet or equal a listed impairment, then the Commissioner continues to the fourth step and determines whether the claimant has the RFC to perform his or her past relevant work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  Finally, if the claimant does not have the RFC to perform past relevant work, the Commissioner completes the fifth step and ascertains whether the claimant possesses the ability to perform any other work.  *See* 20 C.F.R. § 404.1520(a)(4)(v).

The claimant has the burden at the first four steps.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy.  *See, e.g., Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

### b.  Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial."  *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000).  Consequently, "the social security ALJ,

unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted).  As part of this duty, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims*, 530 U.S. at 111.  Specifically, under the applicable regulations, the ALJ is required to develop a claimant's complete medical history.  *Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§ 404.1512(d)–(f)).  This responsibility "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008) (citations omitted).

Whether the ALJ has satisfied this duty to develop the record is a threshold question.  Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405(g), "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Rodriguez ex rel. Silverio v. Barnhart*, No. 02-CV-5782 (FB), 2003 WL 22709204, at *3 (E.D.N.Y. Nov. 7, 2003) ("The responsibility of an ALJ to fully develop the record is a bedrock principle of Social Security law." (citing

*Brown v. Apfel*, 174 F.3d 59 (2d Cir. 1999))).  The ALJ must develop the record even where the claimant has legal counsel.  *See, e.g.*, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  Remand is appropriate where this duty is not discharged.  *See, e.g.*, *Moran*, 569 F.3d at 114–15 ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision.").

### c.  Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act."  *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)) (internal quotation marks omitted).  For Supplemental Social Security Income and Social Security Disability Insurance applications filed prior to March 27, 2017, SSA regulations set forth the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant clinical relationship with the plaintiff.  20 C.F.R. §§ 404.1527(c)(2), 416.927(d)(2); *see also, e.g.*, *Taylor v. Barnhart*, 117 F. App'x 139, 140 (2d Cir. 2004).  Under the treating physician rule, an ALJ was required to give "good reasons," 20 C.F.R. § 404.1527(c)(2), if he determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources.  *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 588 (S.D.N.Y. 2000).  In

addition, a consultative physician's opinion was generally entitled to "little weight." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009).

However, in January 2017, the SSA revised its regulations regarding the evaluation of medical opinion for claims filed on or after March 27, 2017 (such as Malespin's claim in this case). *See* REVISIONS TO THE RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." *Velasquez v. Kijakazi*, No. 19-CV-9303 (DF), 2021 WL 4392986, at *19 (S.D.N.Y. Sept. 24, 2021) (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* (quoting 20 C.F.R. §§ 404.1520c(a), 416.1520c(a)). "Instead, an ALJ is to consider all medical opinions in the record and 'evaluate their persuasiveness' based on the following five 'factors': (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any 'other' factor that 'tend[s] to support or contradict a medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c)).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Under the new regulations, the ALJ must "explain how he considered" both the supportability and consistency factors, as they are "the most

important factors."  20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2); *see also, e.g., Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 160 (S.D.N.Y. 2022) ("[t]he new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight," referring to the supportability and consistency factors).  Evaluating "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502 (KMW) (KHP), 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021) *adopted by*, 2022 WL 717612 (Mar. 10, 2022).  With regard to consistency, "the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes."  *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)); *see generally* 42 U.S.C. § 423(d)(5)(B) (requiring ALJ to base decision on "all the evidence available in the [record]").

In addition, under the new regulations, the ALJ is required to consider, but need not explicitly discuss, the three remaining factors (relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion).  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  "[W]hen the opinions offered by two or more medical sources about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, the ALJ [should] articulate how he considered the remaining factors in evaluating the opinions."  *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8

(W.D.N.Y. 2021) (citing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (internal quotations removed).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." *Velasquez*, 2021 WL 4392986, at *20 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); *see also Acosta Cuevas*, 2021 WL 363682, at *9 (collecting cases) ("the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was *supported* by well-accepted medical evidence and *not inconsistent* with the rest of the record before controlling weight could be assigned." *Acosta Cuevas*, 2021 WL 363682, at *9; *see also e.g., Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) ("consistency and supportability" were foundation of treating physician rule).

"The failure to properly consider and apply" supportability and consistency "is grounds for remand." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *9 (S.D.N.Y. Aug. 6, 2021); *see also Rosario v. Comm'r of Soc. Sec.*, No. 20-CV-7749 (SLC), 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022) ("ALJ must explain in all cases how [he or she] considered" supportability and consistency); *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted by*, 2021 WL 134945 (Jan. 14, 2021)

17

(remanding so ALJ can "explicitly discuss both the supportability and consistency of the consulting examiners' opinions").  "An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case." *Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) (citing *Kohler*, 546 F.3d at 265).  However, the Court need not remand the case if the ALJ only committed harmless error*, i.e.*, where the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (alteration omitted) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### d.  Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court.  *Osorio v. Barnhart*, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006).  "[A]s with any finding of fact, '[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'"  *Id.*  (quoting *Aponte v. Sec'y of Health and Hum. Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).  Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Pena*, 2008 WL 5111317, at *10 (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)).  "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the

alleged symptoms.'" *Id.* (quoting *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. *Id.* First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id.* (citing 20 C.F.R. § 404.1529(a)). The kinds of evidence that the ALJ must consider (in addition to objective medical evidence) include:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional

limitations and restrictions due to pain or other
symptoms.

*Pena*, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996

WL 374186, at *3 (SSA July 2, 1996)).  The ALJ need not list "each of the seven

factors" in his decision, as long as it shows he evaluated claimant's credibility "by

considering all of the relevant evidence."  *See, e.g., Lane v. Saul*, No. 18-CV-5523

(PGG) (OTW), 2020 WL 3965257, at *9 (S.D.N.Y. Mar. 16, 2020) (citation omitted),

*adopted by* 2020 WL 1876325 (Apr. 15, 2020).

### B. Analysis

Malespin argues that 1) the ALJ's RFC determination was not supported by

substantial evidence, and 2) the ALJ's step four analysis was flawed because he

relied on faulty VE testimony.  Pl. Mem. at 13–18.  The Commissioner counters that

both the RFC determination and step four analysis were supported by substantial

evidence.  Def. Mem. at 15–23.

### 1. Substantial Evidence Supports the ALJ's RFC Determination

Malespin first argues that the ALJ improperly relied on the medical opinions

of the Disability Determination Services ("DDS") reviewers because they did not

have access to Malespin's complete medical records.  Pl. Mem. at 14.  She also

argues that the ALJ misrepresented the medical evidence when he characterized

the DDS reviewers as specialists.  *Id.* at 14–15.  Malespin further contends that the

ALJ improperly substituted his own lay opinion for that of a medical professional

because he found the medical opinion of Consultative Examiner ("CE") Dr. Julia

Kaci, who examined Malespin in person, not persuasive in part without providing a rationale.  *Id.* at 15.

### a. The ALJ Properly Weighed the Opinion of Dr. S. Putcha

Malespin first argues that the ALJ erred when he concluded that the DDS reviewer's opinion was persuasive because, according to Malespin, the reviewer "did not have access to the full record."  Pl. Mem. at 14.  Specifically, Dr. S. Putcha, who determined in July 2020 that Malespin was not disabled, AR at 81, did not have "the benefit" of the October and December 2020 treatment records from Malespin's neurologist, Dr. Alexander Frolov, Pl. Mem. at 14, MRI and MRA records from October 2020, *id.*, or Dr. Kaci's examination from December 2020.  *Id.* at 15.[5] Nonetheless, the ALJ credited Dr. Putcha's opinion (found at AR 72–82) that Malespin could perform sedentary work when crafting the RFC determination.  AR at 15, 19, 20; *see also* SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("Jobs are sedentary if walking and standing . . . generally total no more than about [two] hours of an [eight]-hour workday.  Sitting would generally total about [six] hours of an [eight]-hour workday.").

Malespin is correct "that an opinion that fails to use or cite relevant medical evidence is not entitled to significant weight."  *Robin P. v. Comm'r of Soc. Sec.*, No. 20-CV-863 (TJM), 2022 WL 593612, at *8 (N.D.N.Y. Feb. 28, 2022); *see, e.g.*, *Chambers v. Comm'r of Soc. Sec.*, No. 19-CV-2145 (RWL), 2020 WL 5628052, at *13

---

[5] Neither the ALJ nor Malespin refer to Dr. Putcha by name, and instead refer only to the opinions of "DDS reviewers."  *See, e.g.*, AR at 19; Pl. Mem. at 14.

(S.D.N.Y. Sept. 21, 2020) (ALJ erred by giving "great weight" to non-examining physician who "had not reviewed an extensive and material portion of the medical record"). However, although medical opinions "based on an incomplete medical record may not be substantial evidence to support an ALJ finding, this is not true when such opinions are supported by substantially similar findings in treatment notes and other opinions in the record." *Robin P.*, 2022 WL 593612, at *8 (quoting *Carthron-Kelly v. Comm'r of Soc. Sec.*, No. 15-CV-242 (GTS) (WBC), 2017 WL 9538379, at *4 (N.D.N.Y. Sept. 25, 2017)) (cleaned up).

That is the case here. Although Dr. Putcha did not have access to several of Malespin's medical records, his findings are "supported by substantially similar findings in treatment notes and other opinions in the record." *Id.* Notably, Dr. A. Lee, another DDS reviewer who examined Malespin's medical records, including Dr. Kaci's opinion, *see* AR at 86 (listing Dr. Kaci's December 2, 2020 report), came to the same conclusion as Dr. Putcha in December 2020. *Id.* at 101 (concluding that Malespin was not disabled and could perform her past relevant work).

Moreover, the ALJ noted that Dr. Putcha's and Dr. Lee's opinions were consistent with "the rest of the evidence of the record," namely, Malespin's "unremarkable neurological examinations." *Id.* at 20. For instance, treatment notes from Malespin's visits with Dr. Yves LeBrun from January 2019 (less than a year after her alleged onset date) to November 2019, reveal that Malespin had no muscle atrophy, *id.* at 524, and "full power . . . in the lower and upper extremities." *Id.* at 514, 532. Although Malespin testified that she could not walk or stand for

22

long periods, *id.* at 50–51, SSA rulings advise that individuals who are "limited [to] standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017).  "If no muscle wasting [is] present," the SSA further advises that the ALJ may "not, depending on the other evidence in the record," find those symptoms "to be consistent with the . . . alleged impairment-related symptoms."  *Id.*

In sum, "[t]he existence of later medical records is not, by itself, sufficient to reject [an] earlier opinion[]," *Robin P.*, 2022 WL 593612, at *8, and Malespin fails to explain how having access to a full medical record would have affected Dr. Putcha's opinion and the ALJ's subsequent RFC determination.  *See id.* (claimant should "explain how the later acquired evidence undermines the conclusions of [the] examiners").  As noted above, Dr. Lee had access to Dr. Kaci's opinion and came to the same conclusion as Dr. Putcha, and it is unclear how Dr. Frolov's treatment records, and the related MRI and MRA, might have changed Dr. Putcha's opinion. Notably, Dr. Frolov's treatment records pertain only to Malespin's headaches, not her ability to sit or stand for an extended period.  *See* AR at 569–85, 621–25 (describing history of headaches and related treatments).  Moreover, Dr. Frolov told Malespin that the MRI results were "not likely related to [her] headaches."  *Id.* at 582.  Finally, although Dr. Putcha assessed no limitations for noise, fumes, odors, and other environmental factors that triggered Malespin's headaches, *see id.* at 78, the RFC nevertheless reflected those limitations.  *Id.* at 15.  Thus, even if Dr.

Putcha had reviewed Dr. Frolov's treatment records, the RFC would likely have been unaffected.

### b. The ALJ Did Not Misrepresent the Medical Evidence and Properly Relied upon the Opinions of Dr. A. Lee and C. Hernandez

Malespin next argues that the ALJ misrepresented the medical evidence when he found the opinion of Dr. Lee and Disability Adjudicator/Examiner Hernandez persuasive "due to their specialties." AR at 20; Pl. Mem. at 15. According to Malespin, the ALJ should not have found their opinions persuasive because "Reviewer C. Hernandez is neither a doctor, nor a specialist" and "Dr. A. Lee is an MD, which . . . connotes medical expertise, but does not qualify . . . him as a specialist in any particular discipline." Pl. Mem. at 15.

As a threshold matter, Malespin's argument that the ALJ erred in relying on Hernandez's opinion is unavailing, as the opinion was also signed by Dr. Lee, a state agency medical consultant. *See* AR at 102; *see, e.g.*, 20 C.F.R. § 404.1615(c)(1) ("Disability determinations will be made by . . . [a] State agency medical . . . consultant and a State agency disability examiner."). Therefore, it was properly considered as a medical opinion.

Malespin's next argument—that the ALJ misrepresented medical evidence because Dr. Lee lacked specialization—is similarly unavailing. Although "a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to [their] . . . specialty than [a] prior administrative medical finding [from someone] who is not a specialist," 20 C.F.R. § 404.1520c(c)(4), there is no requirement that the ALJ "reject[] . . . a medical

24

opinion merely because the examiner was not a specialist." *Rodriguez v. Kijakazi*, No. 21-CV-2358 (JCM), 2022 WL 3211684, at *17 (S.D.N.Y. Aug. 9, 2022); *see also Robin P.*, 2022 WL 593612, at *8 ("[The] rule does not disqualify the opinion of a non-specialist, but instead directs the ALJ to consider specialization in deciding how much weight to afford an opinion."). Indeed, "an ALJ is entitled to rely on . . . non-examining [s]tate agency medical consultants because [they] are qualified experts in . . . social security disability." *Frederick C. v. Comm'r of Soc. Sec.*, No. 19-CV-1078 (CFH), 2021 WL 466813, at *11 (N.D.N.Y. Feb. 9, 2021). "Such reliance is appropriate where the consultant's opinion is supported by other record evidence." *Id.*

Here, the ALJ was "entitled to rely" on Dr. Lee's opinion because it was supported "by other record evidence." *Id.* Dr. Lee concluded that Malespin was not disabled and could therefore perform her past sedentary work as a credit and collection manager. *See* AR at 101. As the ALJ noted, this opinion is supported by the "unremarkable neurological examinations" in the record. *See id.* at 20.

Moreover, although "a specialist may be more persuasive about medical issues," 20 C.F.R. § 404.1520c(c)(4), Malespin does not point to a specialist opinion in the record upon which the ALJ should have relied instead. Nothing in the record suggests that Dr. Kaci, who assessed more restrictive limitations than Dr. Lee and upon whose opinion Malespin wanted the ALJ to rely, Pl. Mem. at 15, is a specialist. *See* AR at 541–46 (listing Dr. Kaci as "provider" for "consultative examination"), 586–91 (same).

The plaintiff in *Robin P.* similarly argued that the ALJ improperly relied on a pediatrician's opinion because he was "not qualified to give an opinion in [the] case." 2022 WL 593612, at *8.  But even though the ALJ "did not discuss [the pediatrician's] specialization," the court concluded that the ALJ's reliance was permissible because she "explained the weight assigned to the [pediatrician's] opinion based on the relation of that opinion to the medical evidence and [the claimant's] own reports of her activities." *Id.*  Here, too, although the ALJ did not specifically discuss Dr. Lee's specialization, AR at 20 (noting only that opinion was persuasive "due to" DDS doctors' "specialties"), he did explain how he weighed Dr. Lee's opinion by stating that "the [opinion was] supported by, and consistent with, the rest of the evidence of record." *Id.*

In sum, Malespin "fails to identify any reason why [Dr. Lee's] lack of more specific training 'colored his opinion or makes that opinion automatically unreliable,'" *Rodriguez*, 2022 WL 3211684, at *17 (quoting *Robin P.*, 2022 WL 593612, at *8), or explain why Dr. Lee's opinion should be disqualified when, as a state agency physician, he is a "qualified [expert] in the field of social security disability." *Frederick C.*, 2021 WL 466813, at *11.  Thus, the ALJ did not misrepresent Dr. Lee's opinion and adequately explained how he weighed it.

### c. The ALJ did not Substitute his own Lay Opinion for the Opinion of Dr. Kaci

Malespin further contends that "the ALJ rejected Dr. Kaci's" December 2020 "opinion without providing any rationale and improperly substituted his own lay interpretation of the medical evidence." Pl. Mem. at 15.  Thus, Malespin objects to

the RFC because it erroneously "permit[s] work at the sedentary level" as a result of failing to "reflect the limitations opined by Dr. Kaci." *Id.*

In December 2020, Dr. Kaci concluded that Malespin had "moderate limitations for prolonged sitting, standing, walking, bending, kneeling, and squatting" and "[m]arked limitations to lifting, carrying, pushing, and pulling." AR at 589. The ALJ found Dr. Kaci's opinion to be unpersuasive because it was "inconsistent with the unremarkable neurological examinations[,] . . . the opinions rendered by the DDS doctors," and "with the activities of daily living reported by [Malespin] at the hearing, including that she watches TV, crochets, paints, and does needlepoint, all activities typically done while sitting." *Id.* at 20.

Malespin cites *McBrayer v. Secretary of Health and Human Services* for the proposition that an ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," and that "[w]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." Pl. Mem. at 15 (quoting 712 F.2d 795, 799 (2d Cir. 1983)).

Malespin's case, however, is readily distinguishable from *McBrayer* and cases like it. In *McBrayer*, where the court concluded that the ALJ improperly determined that the plaintiff was not blind, the ALJ was found to have substituted his own opinion for that of a medical expert because, according to the medical evidence, the plaintiff was blind under "no uncertain terms" and "nothing in the record suggest[ed] that [the plaintiff] was not [blind]." 712 F.2d at 798–99.

27

Similarly, in *Balsamo v. Chater*, the ALJ impermissibly substituted his own opinion because he noted that there was "no atrophy of any muscle groups . . . one would expect . . . based on the claimant's allegation of . . . pain" without citing to "*any* medical opinion to dispute the treating physicians' conclusions that [the claimant] could not perform sedentary work." 142 F.3d 75, 81 (2d Cir. 1998). Finally, in *Louis D. v. Commissioner*, the ALJ's RFC assessment constituted reversible error because it "contradict[ed] the only medical source who opined on the applicable functional limitations." No. 21-CV-238, 2022 WL 16919305, at *10 (D. Vt. Nov. 14, 2022).

Here, unlike in those cases, the ALJ did not reject Dr. Kaci's opinion for his own, but rather "[chose] between properly submitted medical opinions." *McBrayer*, 712 F.2d at 799. As discussed above, the ALJ rejected Dr. Kaci's opinion because of "the unremarkable neurological examinations" in the record, Dr. Kaci's inconsistency "with the opinions rendered by the DDS doctors," "other evidence in the file," and inconsistencies "with the activities of daily living reported by [Malespin] at the hearing." AR at 20. The ALJ thus properly considered Dr. Kaci's opinion. *See, e.g.*, *Smith v. Berryhill*, 254 F. Supp. 3d 365, 376–77 (N.D.N.Y. 2017) (RFC determination affirmed when ALJ "cited numerous medical opinions to support his finding that [claimant] was able to perform sedentary work"); *Varnum v. Colvin*, No. 15-CV-6269P, 2016 WL 4548383, at *13 (W.D.N.Y. Sept. 1, 2016) (ALJ did not substitute own opinion where medical opinion "was inconsistent with . . . activities of daily living [and] medical record as a whole"); *Losquadro v. Astrue*,

No. 11-CV-1798 (JFB), 2012 WL 4342069, at *10 (E.D.N.Y. Sept. 21, 2012) (no error when ALJ rejected medical opinion "on the basis of inconsistencies with other significant medical evidence") (remanded on other grounds).

### 2. The ALJ's Step Four Analysis was Legally Adequate

According to Malespin, the ALJ's step four analysis was flawed because he relied on "faulty [VE] testimony." Pl. Mem. at 16.  She contends that, although the ALJ's hypothetical reflected limitations on "excessive light," which triggers her headaches, the ALJ nonetheless erred because the VE "did not consider" lighting from computer screens. *Id.* at 15–17.

In his opinion, the ALJ noted that "[a]s the DOT has no language regarding excessive light, the [VE's] opinion is based upon his professional knowledge and experience." AR at 21.  Although her attorney introduced the limitation on light from computer screens during the hearing, AR 66–69, Malespin argues that the ALJ nevertheless failed to meet "his affirmative obligation . . . to inquire about any possible or apparent conflicts between [VE] testimony and the [DOT]." Pl. Mem. at 16.

"When there is an apparent unresolved conflict between VE . . . evidence" and DOT language, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  In other words, whenever the ALJ "intends to rely on a [VE's] testimony, [he] must identify and inquire into all those areas where the expert's testimony seems to conflict with the [DOT definition]." *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92 (2d Cir. 2019) (cleaned up).  In *Lockwood*, the Second Circuit remanded because the ALJ

had relied on VE testimony that the claimant could perform jobs in the national economy that required "reaching" according to the DOT even though the RFC included a limitation on "overhead reaching." *Id.* at 94.

Malespin relies on *Lockwood* and its progeny to argue that the ALJ failed to identify and "inquire" into any possible conflict between the DOT definition and the VE's testimony. *See* Pl. Mem. at 18. The Commissioner's attempt to distinguish Malespin's case from *Lockwood* because that case "was decided at step five," and Malespin's case was decided at step four is unavailing. Def. Mem. at 22. The ALJ also has a duty to resolve conflicts between VE testimony and the DOT at step four. *See, e.g.*, *Huff v. Comm'r of Soc. Sec.*, No. 19-CV-400 (MWP), 2020 WL 4692477, at *5–6 (W.D.N.Y. Aug. 13, 2020) (ALJ erred by not resolving conflict between VE testimony and DOT at step four); *Woodard v. Comm'r of Soc. Sec.*, No. 18-CV-414 (MJR), 2019 WL 5092126, at *4–5 (W.D.N.Y. Oct. 11, 2019) (same).

The Commissioner is correct, however, that the conflict Malespin raises is "not the conflict to which *Lockwood* speaks." Def. Mem. at 21. A "conflict exists between the testimony of a VE and the DOT when the two disagree in categorizing and describing the requirements of the job as performed in the national economy." *Smith v. Colvin*, No. 16-CV-51, 2017 WL 281736, at *8 (D. Vt. Jan. 23, 2017) (citing *Jasinski v. Barnhart*, 341 F.3d 182, 184–85 (2d Cir. 2003) (quotation marks omittted)). But here, there was no conflict because, as the ALJ acknowledged, *see* AR at 21, the relevant DOT language does not refer to excessive light. *See* DOT 169.167-086; *see also, e.g.*, *Gibbons v. Comm'r of Soc. Sec.*, No. 22-CV-2730, 2023

30

WL 3830774, at *4 (2d Cir. June 6, 2023) (no error when "limitations do not conflict

with" DOT because definition "does not include" them) (remanded on other

grounds); *Tanesha L. v. Comm'r of Soc. Sec.*, No. 21-CV-7109 (GRJ), 2022 WL

4779761, at *3 (S.D.N.Y. Oct. 3, 2022) ("no actual conflict [exists] between the [VE's]

testimony and the DOT because the DOT is silent on the subject"). Thus, "because

there was no . . . conflict, any error in the failure to ask the VE whether the VE's

testimony was in conflict with the DOT does not require remand under *Lockwood*."

*Salati v. Saul*, 415 F. Supp. 3d 433, 448 (S.D.N.Y. 2019).

Even if there was a conflict, however, the ALJ fulfilled his obligation under

*Lockwood* to not "simply . . . tak[e] the [VE] at his word that his testimony comports

with the [DOT]."  914 F.3d at 93 (quoting *Washington v. Comm'r of Soc. Sec.*, 906

F.3d 1353, 1362 (11th Cir. 2018)).  At the hearing, the ALJ specifically asked the VE

about how excessive light was addressed in the DOT:

> [ALJ:] . . . Now, the DOT . . . as far as the . . . excessive
> light definition in these two hypotheticals, the DOT does
> not contain any language or guidance regarding that.  Is
> that a fair statement?
> [VE:] Correct.
> [ALJ:] All right.  So, is your opinion about the ability to
> perform past relevant work in hypo[thetical] one, and the
> inability to perform it . . . are these opinions then based
> upon your professional knowledge and experience?
> [VE:] Yes, Your Honor.

AR at 65–66.

The ALJ did not simply take "the VE at his word," *Lockwood*, 914 F.3d at 93,

both because he addressed potential conflicts during the hearing, AR at 65–66, and

because he noted in his decision that "[a]s the DOT has no language regarding

excessive light, the vocational expert's opinion is based upon his professional knowledge and experience." *Id.* at 21. This is a sufficient inquiry under *Lockwood*. *See*, *e.g.*, *Sharone D. P. v. Comm'r of Soc. Sec.*, No. 21-CV-1030 (GRJ), 2023 WL 1966179, at *4 (S.D.N.Y. Feb. 13, 2023) (no error when VE "testified that she was relying on her professional experience in reaching [her] conclusion"); *Arias v. Kijakazi*, 623 F. Supp. 3d 277, 296–97 (S.D.N.Y. 2022) (no error where ALJ relied on VE testimony based on VE's "experience, training, and observations").

Malespin further argues that the VE's testimony is "unreliable and faulty" because the ALJ used "vague terminology" to define excessive light in the hypothetical. Pl. Mem. at 18. This argument also lacks merit. A claimant is not entitled to remand when the hypothetical at the hearing "is an entirely accurate portrayal of [the] RFC as determined by the ALJ," and, as discussed above, "the RFC [is] based on substantial evidence in the record." *Brown v. Colvin*, 47 F. Supp. 3d 180, 189 (W.D.N.Y. 2014). As the ALJ's hypothetical "accurately portray[ed]" his RFC determination, *see* AR at 15, 62–63, this argument fails as well.

Finally, Malespin contends that the ALJ improperly relied on the VE's testimony because, by the VE's own "admission[,] . . . he did not take into account the lighting levels of computer screens," when he considered the excessive light restriction in the ALJ's hypothetical. Pl. Mem. at 18. However, the "burden is on the claimant to prove RFC limitations exceeding those assessed by the ALJ," *Lillian R. v. Comm'r of Soc. Sec.*, No. 20-CV-955, 2022 WL 2275672, at *4 (W.D.N.Y. June 23, 2022) (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)), and

Malespin has not met that burden.  Nothing in the record suggests that Malespin required a light limitation from computer screens.  Indeed, Malespin testified that she watched television "on a daily basis," AR at 58, and the ALJ considered the "activities of daily living reported by [Malespin]," which included "the fact that she watches TV."  *Id.* at 19.  In sum, the ALJ properly relied on the VE's testimony even though the VE did not account for light from computer screens.

### III.   CONCLUSION

For the foregoing reasons, Malespin's motion for judgment on the pleadings is denied and the Commissioner's cross-motion is granted.  The Clerk is directed to mark the motion at Docket Number 14 as "denied," and the motion at Docket Number 22 as "granted," and enter judgment for the Commissioner.

**SO ORDERED.**

Dated: July 25, 2023
     New York, New York

JAMES L. COTT
United States Magistrate Judge